UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RUTH FREDERICKS VIBERT,

             Plaintiff,

             v.

COUNTY OF RENSSELAER et al.,

             Defendants.
_____

1:14-cv-22
(GLS/CFH)

**APPEARANCES:**

**FOR THE PLAINTIFF:**
Law Offices of Elmer Robert Keach,
III, P.C.
One Pine West Plaza - Suite 109
Albany, NY 12205

**FOR THE DEFENDANTS:**
Bailey, Johnson PC
5 Pine West Plaza
Suite 507
Washington Avenue Extension
Albany, NY 12205

**OF COUNSEL:**

ELMER R. KEACH, III, ESQ.

CRYSTAL R. PECK, ESQ.
JOHN W. BAILEY, ESQ.
SYMA S. AZAM, ESQ.

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Ruth Fredericks Vibert commenced this action pursuant to 42 U.S.C. § 1983, alleging a First Amendment retaliation claim, an equal

protection violation,[1] and a violation of New York Civil Service Law § 75-b against defendants County of Rensselaer, Jack Mahar, and Anthony Patricelli. (Compl. ¶¶ 24-42, Dkt. No. 1.)[2] Pending is defendants' motion for summary judgment. (Dkt. Nos. 61, 62, 63, 66.) For the reasons that follow, the motion is denied.

## II. Background[3]

At the time relevant to this matter, Vibert was the Chief of Corrections — one of three divisions — in the Rensselaer County Sheriff's Office. (Defs.' Statement of Material Facts (SMF) ¶¶ 1, 5, Dkt. No. 62, Attach. 2.) She was appointed as Chief of Corrections on or about March 19, 2012 and served in that position until about March 18, 2013. (*Id.* ¶¶ 12-14.) By job description, the Chief of Corrections was required to have a four-year degree. (*Id.* ¶ 16.) Mahar, the Sheriff, oversaw all three divisions and was

---

[1] Vibert purports to "voluntarily discontinue[] her Equal Protection Claim." (Dkt. No. 76 at 2 n.1.) The federal jargon for voluntary discontinuance is "voluntary dismissal." Fed. R. Civ. P. 41(a). A plaintiff is without the power to voluntarily dismiss a claim after a motion for summary judgment is filed. *See* Fed. R. Civ. P. 41(a)(1)(A)(i). Because Vibert has offered no opposition to defendants' arguments directed at her Equal Protection Clause claim, it is dismissed with prejudice as abandoned. *See Gaudette v. Saint-Gobain Performance Plastics Corp.*, No. 1:11-cv-932, 2014 WL 1311530, at *16 (N.D.N.Y. Mar. 28, 2014).

[2] The complaint also alleges in the alternative that the individual defendants "conspired with each other to violate [Vibert]'s First Amendment rights." (Compl. ¶ 27.)

[3] Unless otherwise noted, the facts are undisputed.

2

responsible for hiring and firing; he had "complete discretion relative to any employment decisions associated with [the] Chief of Corrections . . . position." (*Id.* ¶¶ 2, 7, 8, 15.)  Vibert did not have the requisite degree but agreed to earn a two-year degree within the first year of her employment. (*Id.* ¶¶ 18, 19.)  Mahar apparently made an accommodation and effectively modified the job description to require only a two-year degree.  (*Id.* ¶ 20.) The parties disagree as to whether Mahar ever had discussions with Vibert regarding her job performance and professionalism, but if any such meetings took place, the parties agree that they were not documented.  (*Id.* ¶¶ 24, 25.)

On February 15, 2013, Vibert contacted Mahar in the evening on his mobile telephone to seek guidance with regard to an incident between Sheriff's Office employees Master Sergeant Patricelli, alleged by Vibert to be Mahar's close personal friend, (Pl.'s SMF ¶ 14, Dkt. No. 75 at 31-43), and Corrections Officer John Gorman, (Defs.' SMF ¶¶ 4, 26).  Mahar directed Vibert to "not get involved" in an incident, which, in his view — one with which Vibert disagrees — occurred outside the workplace.  (*Id.* ¶ 27; Dkt. No. 63 ¶ 13.)  Vibert approached Mahar four days later, this time in person at work and with documents in hand related to the incident, to again

3

address the episode between Patricelli and Gorman. (Defs.' SMF ¶ 30; Dkt. No. 66, Attach. 1 at 65, 67.) Mahar reiterated that Vibert should not interfere. (Defs.' SMF ¶ 31.) At that point, the New York State Police were conducting an investigation into the incident of which Vibert was aware. (*Id.* ¶ 33.) Vibert contends, and defendants deny, that Mahar "instructed her to shred the documents" and to "retaliate against Officer Gorman by taking unjustified and adverse employment action against him." (Pl.'s SMF ¶¶ 15, 16, 18.) "Vibert told Undersheriff Patrick Russo about . . . Mahar's instruction to shred the documents," and "he advised [her] not to shred any documents." (*Id.* ¶ 20.)

While the parties disagree on the timing, at some point, Mahar became aware that Gorman had "prepared a Workplace Violence Prevention Incident Report," which was among the documents that Vibert wanted Mahar to review. (*Id.* ¶ 38; Pl.'s SMF ¶ 6.) "Around th[e] same time period, . . . Mahar was reminded by his confidential secretary of . . . Vibert's obligation to complete her two-year degree within a period of one year." (Defs.' SMF ¶ 40.) Vibert was subsequently unable to produce the requisite degree upon request by Mahar. (*Id.* ¶¶ 41-42; Dkt. No. 66, Attach. 25.) By letter dated March 1, 2013, Vibert was notified that her

4

employment would be terminated as of March 18, 2013 for failure to meet the degree requirement. (Defs.' SMF ¶¶ 42, 45; Dkt. No. 66, Attach. 26.)

Vibert commenced this action in 2014. (*See generally* Compl.) Following the completion of discovery, defendants moved for summary judgment. (Dkt. No. 61.)

### III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV. Discussion

### A. First Amendment Retaliation[4]

---

[4] Defendants argue that the County is entitled to summary judgment because no facts have been alleged to support a *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), claim. (Dkt. No. 62, Attach. 1 at 2-3; Dkt. No. 78, Attach. 2 at 2.) As Vibert correctly notes, (Dkt. No. 76 at 15-16), municipal liability can be established if the plaintiff can show a constitutional violation "because of a single decision by a municipal official who is 'responsible for establishing final policy with respect to the subject matter in question.'" *Norton v. Town of Islip*, No. 16-490-cv, 2017 WL 440131, at *3 (2d Cir. Feb. 1, 2017) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). The question of whether an official has policy-making authority is informed by state law and is a question of fact for the court. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). The court declines to broach those issues now and, instead, denies so much of defendants' motion as seeks summary judgment for failure to plead a *Monell* claim because they have failed to carry the burden of showing an entitlement to judgment as a matter of law.

Defendants contend that they are entitled to summary judgment on Vibert's free speech claim because the speech at issue is not protected by the First Amendment by virtue of the fact that it was made pursuant to Vibert's official duties as Chief of Corrections and it is not a matter of public concern. (Dkt. No. 62, Attach. 1 at 8-11.) Defendants further argue that "the documents at issue are similarly not afforded First Amendment protection" because Gorman's Workplace Violence Prevention Incident Report was "motivated only by his personal concerns and wholly unrelated to the safety of the public" and, further, the Report was "required by law." (*Id.* at 12-15.) Similarly, defendants assert, any documents filed with the New York State Police "do not relate to a matter of public concern." (*Id.* at 15-16.) Defendants claim that, to the extent Vibert alleges that she was ordered to shred documents and make a false report against Gorman, she was not forced to take any illegal action, there is no causal link between Vibert's termination and the incident with Mahar, and there is no evidence of a conspiracy between Mahar and Patricelli. (*Id.* at 16-21.) The brunt of these arguments is inapposite, but to the extent they are pertinent to Vibert's claims, the court disagrees that defendants are entitled to summary judgment.

"[W]hile the government enjoys significantly greater latitude when it acts in its capacity as employer than when it acts as sovereign, the First Amendment nonetheless prohibits it from punishing its employees in retaliation for the content of their protected speech." *Locurto v. Safir*, 264 F.3d 154, 166 (2d Cir. 2001) (citations omitted). Accordingly, a public employee may establish a First Amendment retaliation claim against her governmental employer under 42 U.S.C. § 1983 upon proof "that (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the [adverse employment action]." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 129-30 (2d Cir. 2013) (internal quotation marks and citations omitted). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir.1999) (citing *Connick v. Myers*, 461 U.S. 138, 147-48 & n.7 (1983)).

The First Amendment protects a public employee's speech only

7

when it is "made as a citizen on matters of public concern rather than as an employee on matters of personal interest." *Garcia*, 706 F.3d at 130 (internal quotation marks and citation omitted). "Speech by a public employee is on a matter of public concern if it relates 'to any matter of political, social, or other concern to the community.'" *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (quoting *Connick*, 461 U.S. at 146). As mentioned above, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. Although the employee's motive "may be one factor in making this determination, it is not, standing alone, dispositive or conclusive." *Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir.2009).

This case is different than the garden variety First Amendment retaliation case. Indeed, Vibert is not arguing that she was retaliated against for what she said, but, instead, for what she refused to say or do. (Compl. ¶ 27.) Provided it meets the requirements set forth above, this kind of "speech" is afforded constitutional protection with as much force as spoken statements. *See Jackler v. Byrne*, 658 F.3d 225, 238, 240-41 (2d Cir. 2011). For that reason, many of defendants' arguments are

8

inapposite.  For example, defendants focus on whether the Incident Report touches upon a matter of public concern or whether documents filed with the State Police were required by law.  (Dkt. No. 62, Attach. 1 at 12-15.)  Those arguments do not address Vibert's speech at all.

Moving on to defendants' remaining arguments, which are directed at the conduct alleged in the complaint itself, disputed issues of fact preclude summary judgement on Vibert's First Amendment claim.  Vibert contends that her speech — the refusal to shred an original Workplace Violence Prevention Incident Report and to retaliate against Gorman — clearly touches upon matters of public concern: (1) the highest ranking member of the Sheriff's Department, Mahar, directed a subordinate, Vibert, to engaged in illegal conduct; and (2) Mahar ordered a cover-up of Patricelli's threat of violence to Gorman, which "implicates the safety and security of the Rensselaer County Jail."  (Dkt. No. 76 at 19-20.)[5]  Vibert specifically alleges that, if she had complied with Mahar's orders to shred the documents, she would have violated New York Penal Law § 175.20, 18

---

[5] Defendants' assertions that Vibert somehow waived her right to argue that the speech in question touched on a matter of public concern, (Dkt. No. 78, Attach. 2 at 4-5), is preposterous.  When a First Amendment retaliation claim is alleged by a public employee, the question of whether the speech at issue is protected — which requires an analysis of whether it touches a matter of public concern — is always in play and is a question of law for the court to decide in light of the facts and circumstances of the case.

U.S.C. § 1512(c), and 18 U.S.C. § 1519.  (*Id.* at 20 n.6.)  Defendants argue that the conduct would not have been illegal.  (Dkt. No. 78, Attach. 2 at 8.)  While the question of legality is not clear on the record now before the court, the court is satisfied that illegality is not the sole consideration.  *See, e.g.*, *Brown v. Office of State Comptroller*, No. 3:15-cv-880, 2016 WL 5745090, at *9 (D. Conn. Sept. 29, 2016) (acknowledging that, although "compelled false statements" are "often prohibited by law," a public employee's refusal to make such statements is constitutionally protected regardless of whether the false statement would have created criminal liability for the speaker).

Although the court appreciates that there are several disputed issues of fact, assuming that Vibert's version of events is true, the speech in question — her refusal to shred an original Workplace Violence Prevention Incident Report or make a false disciplinary report against Gorman — touched upon matters of public concern.  Here, the public would clearly have an interest in knowing that the Sheriff himself directed illegal and/or improper conduct by a subordinate.  *See Jackler*, 658 F.3d at 236.  Additionally, because inappropriate or illegal activity cannot be part of one's official duties, *see Brown*, 2016 WL 5745090, at *10 ("Compelled

10

false statements cannot be part of a public employee's official duties."), Vibert was necessarily speaking as a citizen when she refused to engage in the conduct ordered by Mahar.

Defendants' wispy arguments that causation is lacking, (Dkt. No. 62, Attach. 1 at 18), are also without merit. The temporal relationship between Vibert's refusals and her termination — less than two weeks, (Defs.' SMF ¶ 30; Dkt. No. 66, Attach. 26) — is adequate to demonstrate "that the protected speech was a substantial motivating factor in the adverse employment action." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999), *abrogated on other grounds by Lore v. City of Syracuse*, 670 F.3d 127 (2013). And the relationship between Patricelli and Mahar, for which disputed factual issues remain, (Pl.'s SMF ¶ 14), is enough to support the notion that the two conspired together to violate Vibert's rights.

**B.** <u>**State Law Claim**</u>

Defendants argue that Vibert's claim brought pursuant to Civil Service Law § 75-b,[6] New York's whistleblower protection law, is not

---

[6] Defendants appear to read the complaint to allege a New York Labor Law § 740 claim too. (Dkt. No. 62, Attach. 1 at 21-22.) The complaint, however, asserts no such independent claim. Indeed, as argued by Vibert, (Dkt. No. 76 at 25), and explained by *Tipaldo v. Lynn*, 26 N.Y.3d 204, 215 (2015), § 740 is relevant only to the extent that it provides a basis for the allowance of prejudgment interest to a plaintiff who alleges a Civil Service Law § 75-b claim.

11

applicable to Vibert because she did not disclose an improper governmental action.[7] (Dkt. No. 62, Attach. 1 at 21-22; Dkt. No. 78, Attach., 2 at 10-11.)  Vibert responds that her disclosure to Undersheriff Russo suffices, and, additionally, because Mahar, the Sheriff himself, was responsible, her efforts should be deemed sufficient.  (Dkt. No. 76 at 24.)

New York's whistleblower law prohibits a public employer, such as the County of Rensselaer, from taking adverse action against an employee because of that employee's disclosure of information "(i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action." N.Y. Civ. Serv. Law § 75-b(1)(a), (2)(a).  Improper governmental action is specifically defined as "any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his

---

[7] Defendants also argue that Vibert did not allow a reasonable time for appropriate responsive action.  (Dkt. No. 62, Attach. 1 at 22.)  The provision related to responsive action, § 75-b(2)(b) (McKinney 2015), was repealed shortly after defendants moved for summary judgment.  *See* L 2015, ch 585, § 2.

employment, and which is in violation of any federal, state or local law, rule or regulation." *Id.* § 75-b(2)(a).

Here, disputed issues of fact preclude summary judgment in defendants' favor. Vibert contends that, by notifying Russo of Mahar's orders, she met the disclosure requirement of her whistleblower claim. (Dkt. No. 76 at 24-25.) Russo admits being told by Vibert that Mahar instructed her to shred documents. (Pl.'s SMF ¶ 20.)

Defendants simply fail to carry their burden on summary judgment by showing that the undisputed facts entitle them to judgment. Their sole argument is that Vibert did not properly disclose, (Dkt. No. 62, Attach. 1 at 21-22; Dkt. No. 78, Attach., 2 at 10-11), but disclosure to Russo, the undersheriff, was sufficient inasmuch as he is clearly "an officer [and] employee . . . of a public employer." N.Y. Civ. Serv. Law § 75-b(1)(c)(i). The sole case cited by defendants to suggest that disclosure must be to "both an appointing authority and a governmental body," (Dkt. No. 78, Attach. 2 at 10 (citing *Bal v. City of New York*, 266 A.D.2d 79 (1st Dep't 1999)), does not stand for the proposition advanced by defendants. Accordingly, defendants' motion is denied on this ground.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 61) is **DENIED**; and it is further

**ORDERED** that Vibert's equal protection claim is **DISMISSED** with prejudice as abandoned; and it is further

**ORDERED** that this case is now deemed trial ready and a trial scheduling order will be issued in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 7, 2017
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
U.S. District Judge